### MacCLEMMY v. GILBERT CORSET CO

(Circuit Court of Appeals, Second Circuit. June 22, 1915.)

#### No. 294.

PATENTS ⬅⮞328—VALIDITY AND INFRINGEMENT—BODY BRACES.
     The MacClemmy patents, Nos. 948,233 and 948,234, for body braces, are valid, but in view of the prior art must be narrowly construed, and are not entitled to a large range of equivalents, nor can any of the elements enumerated be disregarded as unimportant. As so construed, *held* not infringed.

Appeal from the District Court of the United States for the District of Connecticut; Edwin S. Thomas, Judge.

This cause comes here upon appeal from a decree holding validity and infringement of two patents for body braces, issued to Robert F. MacClemmy, viz., Nos. 948,233 and 948,234, both issued February 1, 1910. The opinion of Judge Thomas will be found in 221 Fed. 73.

⬅⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Samuel H. Fisher and Henry E. Rockwell, both of New Haven, Conn., for appellant.

Clair W. Fairbank, of New York City, for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The type of body braces to which the patents relate are those having two back sections or pieces with armholes therein adapted to fit over the shoulders of the wearer. These sections are joined in the back by lacings or cords, the free ends of which are secured to parts of a belt which fits around the waist of the wearer, and buckles in front. The tightening of the belt tends to draw the shoulders backward and thereby cause the person wearing the brace to assume a more erect carriage.

There were a number of braces of similar type in the prior art, of which the one which most closely resembles the complainant's is the Munter brace. The improvement over the latter's is thus indicated by complainant's expert:

"The novelty is the construction wherein the armhole encircling portion is formed of two pieces, one projecting from and substantially integral with the upper part of the back, and passing upward over the shoulder. (It would be more correct to say to the top of the shoulder.) The other portion projecting from and substantially integral with the back section below the arm and extending upward in front."

These two portions unite in a seam on the top of the shoulder. "Munter formed his armhole of a piece of the back section which was carried up over the shoulder and thence down in front and united at the bottom," to the back section. Speaking of the old style, with single strap-forming projection, brought from the back over the shoulder and down to body portion below the arm, the specification states that:

"Fabric cannot be cut so that the front portion of the shoulder strap will fit the body equally well at both ends thereof, and the shoulder strap will tend to cut into the flesh and become very uncomfortable, whereas by forming the shoulder strap of two sections, each integral with the body of the back section and connecting these sections together along the top of the shoulder, the completed shoulder strap fits the body and there is no tendency for either edge of the strap to cut into the flesh."

This method of forming the shoulder strap by uniting two prolongations from the back piece with a seam on the top of the shoulder, although not a great invention, seems to be novel and useful, and we are inclined to agree with the District Court in the conclusion that it is patentable, without having recourse to any theory of estoppel to question patentability arising from past relations between the parties. Defendant's brace has the same general method of forming the shoulder strap with seam at the top. He seeks to differentiate, substantially by cutting off his front extension and sewing it to the place it is cut off from. In practice, of course, he cuts a front extension as a separate piece and sews it on to the back piece below the arm, then bringing the free end up to the top of the shoulder and sewing it to the back extension. When this third piece is sewn on, it becomes integral with the back section to which it is sewn; the method of completing the shoulder strap is essentially the patentee's. The extra

seam below the arm is not a drawback to the use of the brace, because a seam in that locality apparently does not distort or irritate.

Whether or not defendant's brace infringes the patent is a question to be determined by the language of the claims. All of the claims are set forth in the opinion of the District Judge, and their full text need not be here repeated. The invention is of a character which will not support any broad range of equivalents, nor warrant discarding any enumerated element of a claim as unimportant. In order to insure against any wrinkling of the shoulder strap, the specifications of the first patent set forth features additional to the location of the seam These consist of interior padding in the front strip—defendant has this also—narrow strips of stiffening and reinforcing material sewn into the shoulder-top seam, and a plurality of transverse seams, as the patent calls them; they are really lines of stitching extending across the front strip. No claim declared on is confined to the single improvement of bringing front and back strips together on the top of the shoulder. In patent 948,233 claim 1 enumerates as an element:

"Separate reinforcing strips extending along each of said (shoulder) seams and serving to hold the fabric smooth along the tops of the shoulders and to prevent it from buckling or wrinkling."

Defendant's brace has no such "separate and reinforcing strips extending along each of the shoulder seams." Claim 2 makes no mention of these separate reinforcing shoulder seam strips, but it enumerates as an element—

"a plurality of transverse seams extending across said reinforcing layers and the padding (i. e., the reinforcing layers in the front portion) and serving to retain the portions in front of the shoulders substantially stiff."

Defendant has a plurality of rows of stitches (seams, as the patent calls them) in the front portion of the shoulder strip, but they are longitudinal, as they were in the earlier art, not transverse as the claim requires. Claim 3 also includes, as an element, "a plurality of transverse seams extending across said reinforcing layers and padding."

Infringement of these three claims is not found in defendant's brace.

Patent 948, 234 shows a back portion of inelastic material, consisting of the two separated back sections of the earlier patent connected by a central connecting portion under the lacings. This is really a lining, and protects the wearer from direct contact with the lacings. The specifications show an arrangement for keeping the central portion from bunching up, and for folding it always in a definite and predetermined position. The patentee also states that difficulty is often experienced due to the tangling of the lacing and the twisting of the belt portions. To remedy this he provides loops for guiding the belt portion. These guiding loops are made an element of claim 4. Considered by themselves, they would not constitute invention; the Patent Office held, quite correctly, that:

"Loops attached to a garment in order to form a guide for straps and belts and similar devices are old and common and it would not require invention to make use of this old expedient in connection with any garment."

The claim was therefore so restricted that this element of it was enumerated as "strips of tape secured to said back sections along their

lower edges." Since defendant locates his guiding tapes, or loops, not along the lower edge of the back sections, but perpendicular thereto, he cannot be held to infringe this claim. Claim 7 relates to the inelastic back portion, which is secured to the two back sections. Defendant has no such back portion between his lacings and body of the wearer. Therefore he does not infringe this claim.

The decree is reversed, with costs of appeal, and cause remanded, with instructions to dismiss the bill.